FILED

2007 Oct-19 AM 10:34
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **JOHN T. SMITH, et al.,** | ) |
| | ) |
| **Plaintiffs/Garnishors,** | ) |
| | ) |
| **vs.** | ) **CV-05-B-2326-S** |
| | ) |
| **EVANSTON INSURANCE COMPANY,** | ) |
| | ) |
| **Defendant/Garnishee.** | ) |

## EVANSTON INSURANCE COMPANY'S MEMORANDUM BRIEF
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

COMES NOW Evanston Insurance Company ((hereinafter "Evanston"), the

Defendant/Garnishee in the above-styled cause, and submits this Memorandum

Brief in Support of Motion for Summary Judgment.

**I.     Initial Statement Of Facts.**

1.     Evanston Insurance Company insured KMAC - Process Knowledge,

Inc. pursuant to Policy No.: CL010200370 for a policy period of October 31, 2002

to October 31, 2003.  Ex. 1, p. 00005.[1]

2.     The Supplemental Declarations page of the policy provides the

Business Description and Location of Premises Covered by This Policy is an

_____

[1] The page references for the policy refer to the Bate Stamp Numbers on the
document.

"Organization (other than Partnership or Joint Venture)," the location of "all premises you own, rent or occupy: "2631 Shuttlesworth Drive, Birmingham, Alabama 35234," and the "Description of Hazards/Insured Classification(s) as "recycling collection center." Ex. 1, p. 00006.

3. The business description on the Commercial Liability Declarations page of the policy is "recycler." Ex. 1, p. 00008.

4. Before Evanston is required to pay under its policy, a claim must be asserted against KMAC-Process Knowledge, Inc., which it becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which the insurance applies. Ex. 1, p. 00020.

5. The insurance applies only to "bodily injury" and/or "property damage," as those terms are defined in the policy, only if "bodily injury" and/or "property damage" is caused by an "occurrence," and is not expected or intended from the standpoint of the insured. Ex. 1, p. 00020.

6. An endorsement to the policy, which is titled "Combination General Endorsement," M/E-001 (4/00), provides that it changes the policy, and states in pertinent part:

> Under 2. Exclusions, f. Pollution, Commercial General Liability Coverage Form, Section I. - Coverages, Pollution/environmental impairment/contamination is not covered under this policy, nor are any

expenses nor any obligation to share damages with or repay anyone else who must pay damages from same in conjunction with occurrences arising or alleged to have arisen out of same. All liability and expense arising out of or related to any form of pollution, whether intentional or otherwise and whether or not resulting injury, damage, devaluation, cost or expense is expected by any Insured or any other person or entity is excluded throughout this policy. All wording is replaced by the following:

(A)    'Bodily injury,' Personal injury,' 'Property Damage' or Damages for the devaluation of property, or for taking, use or acquisition or interference with the rights of others in or on property or air space, or any other type injury or expense; or

(B)    Any loss, cost, expense, fines and/or penalties arising out of any (1) request, demand, order, governmental authority or directive or that of any private party or citizen action that any Insured, or others, test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to or assess same the effects of pollutants, environmental impairments, contaminants, or (2) any litigation or administrative procedure in which any Insured or others may be involved as a party as a result of actual, alleged or threatened discharged, dispersal, seepage, migration, release, escape or placement of pollutants, environmental impairments, contaminants into or upon land, premises, buildings, the atmosphere, any water course, body of water, aquifer or ground water, whether sudden, accidental or gradual in nature or not, and regardless of when.

Ex. 1, p. 00010.

7.    "Pollutants" is defined in the endorsement as: "any solid, liquid, gaseous, fuel, lubricant, thermal, acoustic, electrical, or magnetic irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, fibers, radiation, acid, alkalis, petroleums, chemicals or waste. Waste includes medical

waste and all other materials to be disposed of, recycled, stored, reconditioned or reclaimed." Ex. 1, p. 00011.

8.     The policy additionally contains an endorsement titled "Amendment to M/E-001," M/E-001A (7/01), which provides that it "is hereby understood and agreed that Item 5 of either M/E-001(4/00) or M/E-001 (4/99) is amended to read as follows:

> Asbestos, Lead, Silica Dust, Mold, Bio-organic Growth or Mildew are not covered under this policy, nor are any expenses nor any obligation to share damages with or repay anyone else who must pay damages from same in conjunction with occurrences arising or alleged to have arisen out of:
>
> (a)     'Bodily injury,' Personal injury,' 'Property Damage' or Damages of any type, arising out of the inhalation, ingestion, physical exposure to, absorption of, or toxic substances from asbestos, lead, silica dust, mold, bio-organic growth or mildew in any form, or from any goods, products or structures containing same; or
>
> (b)     Existence of asbestos, lead, silica dust, mold, bio-organic growth or mildew in any form, in occupancy or construction, or in the manufacture, sale, transportation, handling, storage, disposal, or  removal of same, or goods or products containing same; or
>
> (c)     Any supervision, instructions, recommendations, requests, or warnings or advice given or which should have been given, as well as any costs, including but not limited to abatement, mitigation, removal, containment, treatment, detoxification, neutralization, or disposal of same or in any way respond to assess the effects of same.

Ex. 1, p. 00012.

9.      The policy contains an "Animal Exclusion Endorsement" which excludes "bodily injury" and/or "property damage" arising out of or caused by an animal.  Ex. 1, p. 00013.

10.     The policy excludes punitive or exemplary damages, and provides when there is no coverage under the policy, there is no duty to defend.  Ex. 1, p. 00011.

11.     On June 26, 2003, the Plaintiffs filed suit in state court against KMAC Organics, LLC, KMAC Services, The Smith-Ruff Irrevocable Inter Vivos Trust, Phyllis Smith and Kim Ruff seeking class certification, to enjoin a public nuisance, and compensatory and punitive damages as well as other relief.  Ex. 2.

12.     Both KMAC Organics, LLC and KMAC Services are described in the Complaint as "organic compost manufacturer[s]."  Ex. 2.

13.     The Plaintiffs contended that in March or April of 2003, KMAC began composting chicken parts at its Wenonah Road facility which created a public health hazard and nuisance in the surrounding communities, and contended: (a) KMAC's facility has created strong, foul, noxious odors and gases that permeate the area; (b) the smell is so offensive that residents cannot leave their homes or walk outside without holding their breath; (c) the putrid smell is so

5

repulsive that many people have been nauseous and sick, and residents are

suffering headaches, respiratory problems, nausea and eye irritations; (d) the odor

and gases penetrate into homes and get into carpets, drapes, curtains, clothing and

automobiles; (e) the KMAC facility has attracted flies which are breeding maggots

and feeding on the rotting chicken carcasses; (f) the KMAC facility is a breeding

ground for harmful bacteria; (g) the chicken feces composted by KMAC contain

large amounts of nitrogen, phosphorous and potassium; (h) chicken carcasses

composted by KMAC contain E coli; (I) chicken carcasses contain salmonella,

listeria and bacteria; and (j) the offensive smell has reduced the property values in

the surrounding communities.  Ex. 2.

14.    The Plaintiffs contended KMAC's operation constitutes a public

nuisance in that it works hurt, inconvenience and damage to residents of the

surrounding communities, that the Plaintiffs have been specially damaged by the

public nuisance as they have suffered illness, sickness, medical expenses, and

damage to real and personal property, and the nuisance has interfered with their

ability to enjoy their property, that the nuisance violated Jefferson County zoning

ordinances, that Jefferson County had issued a cease and desist order for KMAC

to halt its violation of the zoning ordinance, but KMAC had not complied with the

order, that KMAC's operation constitutes a trespass in that flies, bacteria and

6

gases have migrated from KMAC's facility onto Plaintiffs' property and wrongfully interferes with Plaintiffs' ability to possess and enjoy their property. Ex. 2.

15.    On July 25, 2003, the Circuit Court of Jefferson County, Alabama entered an order finding that "Defendants KMAC Organics, LLC, et al. came to the community and moved into a leased facility at 851 Wenonah Road, " and began composting where egg shells, chicken embryos, wood chips and sugar water were mixed in a large building, and that the "composting process creates a strong, foul, noxious odor and gases which have enveloped the entire community at least from March 2003 to June 2003." Ex. 3.

16.    Amended Complaints were filed against KMAC Organics, LLC, KMAC Services, Process Knowledge, Inc. and "Defendants McCollum and Klinner" alleging the same factual allegations as the original Complaint and stating causes of action for public nuisance, trespass, negligence or wantonness, and a count alleging public nuisance. Ex. 4, Ex. 5.

17.    None of the underlying Complaints filed in state court assert a claim that any of the entities referred to as "KMAC or KMAC Companies" were liable to the Plaintiffs based on any type of contractual relationship by and among any of the Defendants, or based on any type of joint venture by and between the

Defendants.  Ex. 3, 4, 5.

18.    The only factual allegations asserted against the "KMAC or KMAC Companies" arose out of the manufacture of compost.  Ex. 3, 4, 5.

19.    In a hearing before Judge Dan King, Plaintiffs' counsel described "KMAC Organics and KMAC Services" composting operations as emitting odors which got inside the Plaintiffs' homes, and requested that the Court take "immediate action to require KMAC, the operator of this facility," to remove the material that is causing this odor, and to "take other steps to control the odors that are being emitted."  Ex. 11, pp. 3, 6-7.

20.    On August 11, 2005, a Consent Judgment was filed with the Circuit Court of Jefferson County, Alabama, Bessemer Division for $1,020,000.00 against "the corporate Defendant, KMAC," and which provides: "The Plaintiffs have agreed to collect the Judgment from the corporate Defendant, KMAC, only to the extent that KMAC's insurance provides coverage."  Ex. 6.

21.    The judgment was entered on August 26, 2005, against Defendants 1 and 2, who are identified as KMAC Organics, LLC and KMAC Services, and was entered without any depositions being taken in the case.  Ex. 7, Ex. 8.

22.    Timothy McCollum, a co-owner, of Process Knowledge Corporation, testified that Process Knowledge Corporation was incorporated in February of

8

1985, and is in the recycling and material handling business.  Ex. 9, pp. 12-15.

23.     In May of 2002, McCollum and Mike Klinner incorporated KMAC Organics, LLC, the sole purpose of which was to compost materials in order to make an organic fertilizer.  Ex. 9, pp. 15-18, Ex. 10. p. 13.

24.     In February of 2003, KMAC Organics leased facilities at Wenonah Road which is the location involving the state court litigation made the basis of this garnishment proceeding.  Ex. 9, pp. 22, 28, 36-37, Ex. 10, p. 21.

25.     Evanston's insured, KMAC-Process Knowledge, never had a facility at Wenonah Road.  Ex. 9, p. 65.

26.     All sales and expenses for KMAC Organics, LLC were kept separate from the sales and expenses for Process Knowledge Corporation.  Ex. 9, pp. 42-43, 70.

27.     When asked whether there was any operation by the insured, KMAC-Process Knowledge, which affected the Plaintiffs who filed the lawsuit, McCollum responded "No."  Ex. 9, p. 67.

28.     In order to create the fertilizer, KMAC Organics, LLC used ground up eggshells, ground up woodwaste, sawdust, leaves, and grasses, as well as out-of-date orange juice and coke which resulted in compost that emitted an odor.  Ex. 9, pp. 68, 83-85, 109, 115-16, 136-39.

29.    The egg shells were picked up and delivered to the Wenonah facility by KMAC Organics, LLC, in trucks owned by KMAC Organics, LLC.  Ex. 9, pp. 76-79, 89, Ex. 10, pp. 24-25.

30.    Although McCollum originally testified that Process Knowledge Corporation had a contract with a dog food corporation to purchase leftover egg shells, (or waste) which were used in the composting activities of KMAC Organics, the contracts produced at the depositions of McCollum and Klinner clearly indicate the contracts were with an entity identified as KMAC Services. Deposition Ex. 6, attached to Ex. 9 (McCollum's deposition), Ex. 9, pp. 149.

31.    The contracts were executed by Robert Klinner as the President of KMAC Service, Inc.  Deposition Ex. 6, attached to Ex. 9 (McCollum's deposition), Ex. 9, p. 149.

32.    The contracts executed by Robert Klinner additionally provide that the parent company or affiliate of KMAC Services is Process Knowledge Corporation located at 2631 Shuttlesworth Drive in Birmingham, AL which is the same address as KMAC Services, Inc.  Deposition Ex. 6, attached to Ex. 9 (McCollum's deposition), Ex. 9, p. 150.

33.    In addition to egg shells, which were the leftover waste of the dog food company, KMAC Organics, LLC additionally hauled wood waste from

landfills to the Wenonah Road facility to use in the composting activities.  Ex. 9, p. 133.

34.     KMAC Organics, LLC also used waste from the Coca-Cola Bottling Company in the composting activities.  Ex. 9, p. 135.

35.     Therefore, the composting operations of KMAC Organics, LLC which are made the basis of the lawsuit filed by the Plaintiffs included waste from the dog food company, waste from the landfill and waste from the Coca-Cola Bottling Company.  Ex. 9, p. 135.

36.     Process Knowledge Corporation was not a party to the contractual agreement which involved the eggshells which were used in the composting activities.  Ex. 9, pp. 151-52.

37.     The insured, KMAC Process Knowledge, was never involved in the organic composting business after KMAC Organics, LLC was formed in May of 2002.  Ex. 9, p. 64.

38.     KMAC Process Knowledge was in the business of recycling plastic, metal, wood, glass, cardboard, etc.  Ex. 9, pp. 60-63, 68, Ex. 10, pp. 13-14.

39.     McCollum testified that Process Knowledge's facility on Shuttlesworth Drive is a different facility from the one at issue on Wenonah Road. Ex. 12, pp. 165-67.

40.    McCollum additionally testified that Process Knowledge Corporation was doing business as KMAC Industrial Recharge at 2631 Shuttlesworth Drive. Ex. 12, pp. 166-67.

41.    The first complaint regarding KMAC Organics' operations at the Wenonah Road facility was in April of 2003. Ex. 9, p. 82.

42.    McCollum testified that in his opinion, the Plaintiffs were not damaged in accordance with the consent judgment of $1 million, and that he does not believe they sustained damages of $20,000 paid by KMAC Organics to the Plaintiffs. Ex. 9, pp. 52-53.

43.    McCollum testified that general liability insurance coverage was not purchased for KMAC Organics, LLC because the sole liability that was foreseen for that entity was trucking liability exposure. Ex. 9, pp. 70-72, 93-94.

44.    McCollum does not know of any evidence that Evanston was ever placed on notice that Process Knowledge Corporation was in the composting business or was conducting any composting activities. Ex. 9, pp. 98-99.

45.    When an audit was conducted on behalf of Evanston in October of 2003, the audit did not include any sales from KMAC Organics, LLC. Ex. 9, p. 75.

46.    McCollum testified that he does not believe anyone ever requested

12

that KMAC Organics, LLC be added as an additional insured to the Evanston policy. Ex. 9, pp. 106-07.

47.    Because of the pending lawsuit, the business of KMAC Organics was shut down in early June of 2003. Ex. 9, pp. 46-48.

48.    The time period at issue with respect to KMAC Organic's composting activities was from approximately February of 2003 to June of 2003. Ex. 9, pp. 48-50.

49.    It is the opinion of Edward O. Conerly, an attorney who has represented insurance companies and handled insurance matters in Birmingham, Alabama since 1962, that the wrongdoing for which recovery is sought and the damages claimed are clearly excluded by the endorsements of Evanston's policy bearing policy #CL010200370, which was issued by Evanston Insurance Company to KMAC-Process Knowledge, Inc. Ex. 13.

50.    It is Mr. Conerly's opinion that the policy excludes damages of any sort including those claimed in the Plaintiffs' complaint and injury resulting from or relating to any and all forms of pollution, whether intentional or otherwise, and that the definition of pollutants and the other descriptive language in the exclusionary endorsements to the policy clearly excludes coverage for injury and damage as described in the complaint. Ex. 13.

51.   It is Mr. Conerly's opinion that the wrongdoing described in the complaint falls within the broad definition of pollutants provided for in the endorsement, and that the Plaintiffs' claims triggered neither the duty to defend nor indemnify Ex. 13.

## II.   Argument.

The Plaintiffs cannot present any evidence, much less substantial evidence that, KMAC-Process Knowledge, the named insured on Evanston's policy of insurance, was liable to the Plaintiffs with respect to the lawsuit filed in the Circuit Court of Jefferson County, Alabama.  Additionally, even assuming any entity insured by Evanston was liable to the Plaintiffs, the claims alleged by the Plaintiffs in the state court litigation were not covered under Evanston's policy of insurance. Accordingly, Evanston is entitled to a final summary judgment as a matter of law with respect to this garnishment action.

### A.   Evanston's Insured Was Not Liable To The Plaintiffs In The Underlying Litigation.

The Plaintiffs cannot present any evidence that a judgment was rendered against an entity insured by Evanston.  The Consent Judgment rendered in the underlying litigation was entered against "the corporate Defendant, KMAC."  Ex. 6.  The judgment was entered on August 26, 2005, against Defendants 1 and 2,

14

who are identified as KMAC Organics, LLC and KMAC Services.  Ex. 7.

Evanston's named insured under its policy is KMAC - Process Knowledge, Inc.

Ex. 1, p. 00008.  The Plaintiffs did not file suit against any entity by the name of

"KMAC-Process Knowledge, Inc."  The entity which was responsible for

conducting the composting activities which allegedly caused damage to the

Plaintiffs was KMAC Organics, LLC.  This entity had no general liability or other

insurance policy which may have provided coverage for the claims alleged against

KMAC Organics, LLC.  Evanston did not undertake to insure, and was not paid to

insure, any activities which were being conducted at the Wenonah Road facility.

It cannot now be called upon to pay a judgment rendered with respect to those

activities.

Moreover, although there are entities which are identified as additional

insured's under the policy, no Defendant which was sued by the Plaintiffs in state

court constitutes an additional insured under Evanston's policy of insurance.

Additionally, no Defendant which was sued by the Plaintiffs in state court fall

within the definition of an "insured" as that term is defined in Section II of the

policy. Ex. 1, pp. 00025-26.

In <u>Maness v. Alabama Farm Bureau Mut. Casualty Ins. Co.</u>, 416 So.2d 979

(Ala. 1982), the Alabama Supreme Court described the process by which

15

insurance proceeds are applied to satisfy a judgment under the direct action statute as follows:

> Under Alabama law, the injured party acquires a vested interest (secondary) in the nature of a hypothecation of the insured's rights under the policy.
>
> Once an inured party has recovered a judgment against the insured, the injured party may compel the insurer to pay the judgment.  The injured party, however, can bring an action against the insurer only after he has recovered a judgment against the insured **and only if the insured was covered against the loss or damage at the time the injured party's right of action arose against the insured tort-feasor**.

Id. at 981-82 (emphasis added).  Thus, the Plaintiffs' interest in this case is subject to the qualification that "terms of the policy imposing obligations on the insured are effective as against the injured party."  George Employers' Liab. Assurance Corp., 219 Ala. 307, 310, 122 So. 175, 177 (1929).  Any defenses to liability available to Evanston in an action brought by KMAC Organics, Inc. and/or KMAC Services are also available to it in the garnishment proceedings brought by the Plaintiffs.  Employers Ins. Co. v. Crook, 276 Ala. 177, 183, 160 So.2d 463, 469-70 (1964).

Therefore, even if the entity "Process Knowledge, Inc." is the same entity "KMAC-Process Knowledge, Inc.," and is the named insured under Evanston's policy, the Plaintiffs must prove by substantial evidence there is coverage under the policy for their claims.  See, e.g., State Farm Fire & Cas. Co. v. Slade, 747

16

So.2d 293, 325-26 (Ala. 1999)(considering, on rehearing, whether the insureds had presented substantial evidence showing that their loss was a collapse as that term was defined in a policy); <u>Colonial Life & Accident Ins. Co. v. Collins</u>, 280 Ala. 373, 376, 194 So.2d 532, 535 (1967)("The burden was on the plaintiff to prove that the insured's death resulted from injuries sustained in such a manner as to bring him within the coverage of the policy.").

In the instant action, there is no evidence that an entity which was insured under Evanston's policy was liable to the Plaintiffs in the underlying litigation. Thus, coverage tendered to Evanston to defend KMAC Organics, Inc. and/or KMAC Services was due to be denied in that neither of those entities, which are the entities against whom judgment was rendered, were insured under Evanston's policy of insurance.  There is no evidence, much less substantial evidence to support a claim that KMAC Organics, Inc. and/or KMAC Services is a named insured, is an additional insured or falls within the definition of insured as defined in Section II of the policy.

Moreover, assuming the judgment was rendered against Process Knowledge Corporation, and Process Knowledge Corporation is the named insured under Evanston's policy, there is no evidence to support a claim that Process Knowledge Corporation was liable to the Plaintiffs for the claims alleged in state court.  If

17

Process Knowledge Corporation was not "legally obligated to pay" the Plaintiffs, then coverage is not invoked under the policy.  Although McCollum initially testified that Process Knowledge Corporation entered into a contract to purchase eggshells from a dog food company, the contracts produced at his deposition evidence these contracts were entered into by KMAC Services, an entity which is not insured by Evanston.  As there is no obligation on the part of Process Knowledge Corporation to pay the Plaintiffs, it is not "legally obligated to pay" as required by the policy in order for Evanston to have any indemnity obligations to the Plaintiffs in their garnishment proceedings.

In Stone Building Co. v. Star Electrical Contractors, Inc., 796 So.2d 1076 (Ala. 2000), the Alabama Supreme Court noted that:

> **Indemnity against losses does not cover losses for which the indemnitee is not liable to a third person, and which the indemnitee improperly pays**. A person legally liable for damages who is entitled to indemnity may settle the claim and recover over against the indemnitor, even though he has not been compelled by judgment to pay the loss. In order to recover, the indemnitee settling the claim must show that the indemnitor was legally liable, and that the settlement was reasonable. *In the event that an indemnitor is not afforded the alternative of participating in a settlement or conducting the defense against the original claim, an indemnitee settling the claim will have the burden of establishing actual liability to the original plaintiff rather than the lesser burden of showing potential liability.*

796 So.2d at 1090 (emphasis added).

Thus, assuming the judgment was rendered against Process Knowledge

Corporation, assuming Process Knowledge Corporation is an insured under Evanston's policy of insurance, and assuming the claims are covered and are not excluded by the policy, Process Knowledge Corporation improperly agreed to have a judgment rendered against it with the intention that its insurance carrier be responsible for paying a judgment which Process Knowledge was not responsible for paying.  As stated above, there is no evidence that Process Knowledge was liable to the Plaintiffs for anything related to the composting activities at Wenonah Road.  According, to the extent it agreed to pay any judgment, and a judgment was rendered against it which was covered by the policy, such agreement was not proper and Evanston is not liable to the Plaintiffs to pay the judgment.

Additionally, there is no evidence, much less substantial evidence, that there was "potential liability" against any entity insured by Evanston for a covered loss under the policy.  The Court in Stone Building Co. stated: "when the indemnitor has notice of the claim and refuses to defend, the indemnitor is bound by any good faith reasonable settlement, and the indemnitee need only show potential liability." 796 So.2d at 1090.  With respect to the claims plead by the Plaintiffs in the state court litigation, there was no liability on the part of any insured under Evanston's policy of insurance with respect to those claims.  Evanston's insured was in the recycling business, not in the business of manufacturing organic compost.

**B.      The Plaintiffs' Claims Are Excluded By Evanston's Policy Of Insurance.**

Assuming any entity which is insured under Evanston's policy of insurance was liable to pay the Consent Judgment, which Evanston disputes, the Plaintiffs' claims against "KMAC" are excluded by endorsement M/E-001 (4/00), the pollution exclusion, and/or by M/E-001A (7/01), the "Asbestos, Lead, Silica Dust, Mold, Bio-organic Growth or Mildew" exclusion.

The Alabama Supreme Court has recognized that "[t]he issue whether a contract is ambiguous or unambiguous is a question of law for a court to decide." State Farm Fire & Cas. Co. v. Slade, 747 So.2d 293, 308 (Ala. 1999). "'If the terms within a contract are plain and unambiguous, the construction of the contract and its legal effect become questions of law for the court....'" Id., 747 So.2d at 308 (quoting McDonald v. U.S. Die Casting & Dev. Co., 585 So.2d 853, 855 (Ala. 1991)). In Alabama, a provision in an insurance contract is ambiguous "when more than one interpretation may fairly be given to a policy provision." Twin City Fire Ins. Co., Inc. v. Ohio Cas. Ins. Co., Inc., 480 F.3d 1254, 1262 (11th Cir. 2007), quoting Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co., 817 So.2d 687, 695 (Ala. 2001). In deciding whether a provision is ambiguous, the terms "should be given a rational and practical construction." Id. quoting State Farm Fire & Cas. Co. v.

Slade, 747 So.2d 293, 309 (Ala. 1999).  "[A] court cannot consider the language in the policy in isolation, but must consider the policy as a whole." Id.  Because the pollution exclusion, and the exclusion for "bio-organic growth" are not ambiguous, then this Court must enforce the terms of the insurance policy as written.  Safeway Ins. Co. of Alabama, Inc. v. Herrera, 912 So.2d 1140 (Ala. 2005).

Evanston is aware of at least one other Court which has held that odors arising from composting fall within a pollution exclusion.  In City of Spokane v. United Nat. Ins. Co., 190 F.Supp.2d 1209 (E.D.Wash. 2002), the insured, City of Spokane, filed suit against United National Insurance Company, Lexington Insurance Company, and Genesis Insurance Company alleging the insurance carriers improperly denied insurance coverage and failed to defend it against allegations arising out of the design, construction, and operation of the Colbert Compost Facility located in Spokane County, Washington.  Specifically, the insured asserted the excess insurance policies it purchased from the insurers should have covered claims arising from odors created by the compost facility.  The insurers asserted their policies contained pollution exclusions precluding coverage for claims such as those relating to the odors from the compost facility.

The lawsuit against the insurance carriers arose from litigation filed by

21

various persons owning homes near the compost facility. The complaint alleged

that the compost facility emitted offensive, noxious, unlawful, and otherwise

unreasonable odors. The homeowners asserted four causes of action arising from

the emission of odors from the facility: nuisance, trespass, negligent release of

odors, and taking by inverse condemnation without compensation. They alleged

that the compost facility had decreased the value of their property and interfered

with their use and enjoyment of the property. All claims asserted in the

homeowners' complaint arose from the odors emitted by the compost facility. The

City entered into a settlement which totaled, including the homeowners' attorney's

fees, more than $4 million.

> The United National policy excluded coverage for the following:
>
> (1) The contamination of any environment by pollutants that are introduced at any time, anywhere, in anyway;
>
> (2) All personal injury, property damage, public officials [sic] errors and omissions liability, costs or other loss or damage arising out of such contamination, including but not limited to, cleaning up, remedying or detoxifying such contamination; or
>
> (3) Payment of sums related to (a) the investigation or defense of any loss, injury or damage or (b) payment of any cost, fine or penalty or (c) payment of any expense involving a claim or suit [described] above.

> The United National policy defined pollutants as "smoke, vapors, soot,

fumes, acids, sound, alkalies, chemicals, liquids, solids, gases, thermal pollutants,

and all other irritants or contaminants, including wastes.  Wastes include materials

to be recycled, reconditioned or reclaimed."  The policy defined contamination as

"any unclean or unsafe or damaging or injurious or unhealthful condition arising

out of the presence of pollutants, whether permanent or transient in any environment."

The Lexington insurance policy also contained the following pollution

exclusion, which indicated the policy did not apply:

> (1) To any claim for Personal Injury, or Bodily Injury, or Property Damage
> or Public Officials [sic] Errors and Omissions arising out of the discharge,
> disbursal, release or escape of pollutants, anywhere in the world;
>
> (2) To any obligation to defend any suit or claims against the Insured
> alleging Personal Injury, or Bodily Injury, or Property Damage, or Public
> Officials [sic] Errors and Omissions and seeking Damages, if such suit or
> claim arises from Personal Injury or Bodily Injury, or Property Damage, or
> Public Errors and Omissions arising out of the discharge, disbursal, release
> or escape of pollutants, anywhere in the world;
>
> (3) To any loss, cost or expense arising out of any governmental direction or
> request that the Insured test for, monitor, clean up, remove, contain, treat,
> detoxify or neutralize pollutants;
>
> (4) To any loss, cost or expense incurred by a governmental unit or third
> party,  including but not limited to cost of investigation and monitoring, and
> attorneys' fees, relating to activities in connection with efforts to test for,
> monitor, clean up, remove, contain, trace, detoxify or neutralize pollutants.

"Pollutants" was defined as any solid, liquid, gaseous or thermal irritant or

contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and

waste material.  Waste material, includes materials which are intended to be or

have been recycled, reconditioned or reclaimed.

The Genesis policy, like the United National and Lexington policies, also included a pollution exclusion which indicated that the insurance policy would not apply to any suit arising from claims or losses that "would not have occurred in whole or in part but for the actual, alleged or threatened discharge, disbursal, seepage, migration, release or escape of pollutants at any time."

The sole issue presented in that case by way of summary judgment was whether the insurance policies clearly and unambiguously excluded coverage of claims arising from the odors emitted by the Colbert Compost Facility which presented the question of whether those odors constituted "pollutants," as defined by the policies. The insurance contracts with the City each contained a pollution exclusion, and the insurers relied on those exclusions in denying the City coverage for its claims and losses related to the homeowners' lawsuit.   All the insurers argued that odors from the compost facility constituted pollution clearly excluded from insurance coverage.

The Court held that although the pollution exclusions did not explicitly list "odors" in the definitions for "pollutant" or "contaminant," the policies clearly excluded coverage for odors produced by the Colbert Compost Facility.  The United National policy specifically excluded coverage for "smoke, vapors ...

24

fumes, acids ... gases ... and all other irritants and contaminants, including wastes."

The policy also explicitly excluded coverage for "any unclean or ... damaging or

injurious ... condition arising out of the presence of pollutants."  The homeowners

claimed that the odors, which arose from the waste processed at the compost

facility, damaged their property and interfered with their use and enjoyment of that

property; the City settled those claims for more than $4 million, implicitly

admitting that the odors did cause damages.  The Court held the Lexington

pollution exclusion also lacked ambiguity, as it excluded coverage for any claims

or losses "arising out of ... pollutants."  It also included language similar to the

United National policy.  The Genesis policy reflected the language in the United

National and Lexington policies, excluding coverage for "the actual, alleged or

threatened discharge, dispersal, seepage, migration, release or escape of pollutants.

At oral argument, the City's attorney admitted that the compost odors enter

the air as fumes or vapors.  The Court held that reading the insurance policies to

include coverage of odors from solid waste--although the policies clearly excluded

coverage for gases, fumes, vapors, contaminants, and irritants--would require a

strained interpretation and produce an absurd result.  Migration of odors from a

solid waste facility clearly constituted contamination, or pollution, of the

environment.  Therefore, the Court held the City could not obtain indemnification

from the insurers for its settlement with the homeowners as the policies' pollution exclusions barred coverage.

In the instant action, the Court must consider whether the odor emitting from the composting activities constitutes a "pollutant" as that term is defined by Evanston's policy.  See Federated Mut. Ins. Co. v. Abston Petroleum, Inc., --- So.2d ---- * 5, 2007 WL 1098564 (Ala. 2007).  It cannot be disputed that the emitting of odor from the composting activities is pollution, environmental impairment and/or contamination, and falls within the definition of "pollutants" as defined in the endorsement.  The state court concluded that the "composting process creates a strong, foul, noxious odor and **gases** which have enveloped the entire community."

There is no coverage under Evanston's policy for pollution, environmental impairment or contamination, and "[a]ll liability and expense arising out of or related to any form of pollution, whether intentional or otherwise and whether or not resulting injury, damage, devaluation, cost or expense is expected by any Insured or any other person or entity is excluded throughout th[e] policy."  The policy does not provide coverage for "smoke, vapor ... fumes, acid ... or waste" which includes "all materials to be disposed of."  The very materials used to make the compost was the "waste" from other industries, i.e., eggshells, wood, and old

Coke and orange juice, which otherwise would have been "disposed of". The Plaintiffs claim that the odors, which arose from the waste processed at the compost facility, damaged their property and interfered with their use and enjoyment of that property.

The policy is not ambiguous and specifically excludes "all liability and expense arising out of or related to any form of pollution." The policy excludes any litigation in which any insured may be involved as a party as a result of actual, alleged or threatened discharged, dispersal, seepage, migration, release, escape or placement of pollutants, environmental impairments, contaminants into or upon land, premises, buildings, the atmosphere, any water course, body of water, aquifer or ground water. Ex. 1, p. 00010.

The odor and fumes emitting from the compost is clearly pollution when those "fumes escape into the atmosphere" as did the gasoline fumes in the Federated case. Id. * 7. Because the composting activities resulted in a pollutant as that term is used in the policy, there can be no argument that the pollution-exclusion clause is ambiguous.

Additionally, the policy excludes bio-organic growth and expenses and any obligation to share damages with or repay anyone else who must pay damages from bio-organic growth. The policy excludes occurrences arising or alleged to

27

have arisen out of "bodily injury," "property damages" or damages of any type arising out of the inhalation, ingestion, physical exposure to, absorption of, or toxic substances from bio-organic growth in any form, or from any goods, products or structures containing same.  The entire purpose of the composting activities was to create an organic composting material that was to ultimately be used as fertilizer.  There is no ambiguity in the endorsement which excludes coverage for any damages arising out of the inhalation and exposure to bio-organic growth.

Assuming, without conceding, that any insured under Evanston's policy of insurance is liable to the Plaintiffs for "bodily injury" and/or "property damage" which resulted from an "occurrence" as those terms are defined in the policy, any such claims and damages were excluded from the policy.   Accordingly, Evanston is not liable to the Plaintiffs for any portion of the judgment rendered in the state court litigation, and a final summary judgment as a matter of law is due to be rendered in favor of Evanston Insurance Company.

**C.    The Plaintiffs Failed To Controvert The Verified Answer Filed By Evanston.  Therefore, Evanston's Answer is Not Disputed, And A Judgment Is Due To Be Rendered In Its Favor As A Matter Of Law.**

On September 30, 2005, the Plaintiffs filed a process of garnishment against

Evanston Insurance Company seeking to collect the consent judgment of
$1,020,000.00 entered against KMAC Organics, LLC and KMAC Services.
Evanston Insurance Company was served by certified mail on October 24, 2005.
On November 14, 2005, Evanston Insurance Company timely removed this case to
this Court.  On November 14, 2005, Evanston Insurance Company filed a Verified
Answer with the Court denying that it owed any portion of the consent judgment
rendered against KMAC Organics, LLC and KMAC Services.

Section 6-6-448, Ala. Code (1975), provides that the answer of the
garnishee may be controverted within 30 days after notice of the filing of the
answer by the garnishee.  Accordingly, the Plaintiff/Garnishors could have
contested the answer of Evanston Insurance Company pursuant to § 6-5-448, or
the Plaintiffs/Garnishors could have moved the Court for Evanston Insurance
Company to orally supplement its verified answer pursuant to § 6-6-450, Ala.
Code.  The Plaintiffs/Garnishors never contested the verified answer filed by
Evanston Insurance Company on November 14, 2005, and did not timely move the
Court for an oral examination of Evanston Insurance Company's verified answer.
Therefore, a final judgment as a matter of law is due to be rendered in favor of
Evanston Insurance Company, and it is due to be discharged from the process of
garnishment.

29

**WHEREFORE, THE PREMISES CONSIDERED**, the Defendant respectfully requests that this Court enter a final summary judgment in its favor as a matter of law.

/s/Dorothy A. Powell
MARK W. LEE
DOROTHY A. POWELL

**OF COUNSEL:**

PARSONS, LEE & JULIANO, P.C.
300 Protective Center
2801 Highway 280 South
Birmingham, AL 35223-2480
(205) 326-6600

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 19th day of October, 2007, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Mr. Richard E. Smith
Mr. Greer Mallette
CHRISTIAN & SMALL, LLP
1800 20th Street, North
Birmingham, AL 35203

/s/Dorothy A. Powell
OF COUNSEL