IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JOHN T. SMITH, et al., | ) |
| | ) |
| Plaintiffs/Garnishors, | ) |
| | ) |
| vs. | ) CV-05-B-2326-S |
| | ) |
| EVANSTON INSURANCE COMPANY, | ) |
| | ) |
| Defendant/Garnishee. | ) |

**EVANSTON INSURANCE COMPANY'S REPLY SUBMISSION**

COMES NOW Evanston Insurance Company ((hereinafter "Evanston"), and submits this Reply Submission.

**I.     Evanston's Reply to Plaintiff's Additional Undisputed Facts.**

1.     Evanston does not dispute what is quoted in Plaintiffs' Ex. 2 attached to McCollum's deposition.  Evanston disputes the implication that Process Knowledge Corporation was performing composting operations as the document referenced by the Plaintiffs clearly states "composting operations are performed off the premises by a third party," and it is not disputed that the entity performing the composting operations was KMAC Organics, LLC.  Plaintiffs' Ex. 2 attached to McCollum's deposition, Ex. 9, pp. 15-18, Ex. 10. p. 13.

2.     Disputed.  This statement in the abstract is unclear and makes no sense.

3. Disputed. The contracts produced at the depositions of McCollum and Klinner clearly indicate the contracts were with an entity identified as KMAC Services, and the contracts were executed by Robert Klinner as the President of KMAC Service, Inc. Deposition Ex. 6, attached to Ex. 9, p. 149.

4. Disputed. At the request of the insured's agent, Evanston Insurance Company provided a policy of insurance to an entity identified by the insured's agent as KMAC-Process Knowledge, Inc. Deposition Ex. 8 attached to Ex. 9, pp. 156-57.

5. Disputed. This statement is unclear as to what it means in the abstract.

6. Disputed as to interpretation of the cited deposition testimony. Klinner and McCollum testified that the purpose of setting up KMAC Organics, LLC was to compost materials in order to make an organic fertilizer. Ex. 9, pp. 15-18, Ex. 10. p. 13.

7. Disputed. The original shareholders of KMAC Organics, LLC were McCollum and Mike Klinner. Ex. 9, pp. 17-21. This corporation was established to begin a new business of composting which was originally conducted on the premises property owned by Mike Klinner until they were stopped by ADEM. Ex. 9, pp. 22-26, 30-32.

9. Disputed. McCollum originally testified that Process Knowledge Corporation had the contract, but the contracts produced at the depositions of McCollum and Klinner clearly indicate the contracts were with an entity identified as KMAC Services, and were executed by Robert Klinner as the President of KMAC Service, Inc. Deposition Ex. 6, attached to Ex. 9, Ex. 9, p. 149.

11. Disputed. The contracts were with an entity identified as KMAC Services, and were executed by Robert Klinner as the President of KMAC Service, Inc. Deposition Ex. 6, attached to Ex. 9, Ex. 9, pp. 149.

13. Disputed. McCollum testified that KMAC Organics, LLC obtained a loan through a bank, and financed through the proceeds of the contracts attached to McCollum's deposition which were entered into with KMAC Services, Inc. Ex. 9, pp. 127-28, Deposition Ex. 6, attached to Ex. 9.

14. Disputed. The only risk McCollum thought KMAC Organics, LLC had was trucking liability. Ex. 9, pp. 70-72, 93-94.

**II. Reply Argument.**

    **A. Evanston Did Not Waive Denying Coverage.**

The denial letter is not attached to any evidentiary submission before this Court. Therefore, the Plaintiffs cannot raise an issue of fact with respect to any grounds relied upon by Evanston with respect to the denial in that the Court only

3

has the policy before it which was issued to KMAC - Process Knowledge, Inc.

Furthermore, the denial letter did in fact address the fact that the named insured was not a party to the lawsuit, as recognized by the Plaintiffs who quoted portions of the letter: "It is not clear whether the Named Insurance in policy number CL010200370 is the same person as the party named in the complaint as 'KMAC Organics, LLC' or 'KMAC Services.'" (Plaintiffs' brief at 11).

Even assuming the issue of whether an insured under Evanston's policy of insurance had not been mentioned as grounds for the denial of coverage, that would not operate to estop Evanston from arguing that issue before this Court. The general rule in Alabama is that coverage under an insurance policy cannot be enlarged by waiver or estoppel. Johnson v. Allstate Ins. Co., 505 So.2d 362, 365 (Ala. 1987); see Home Indem. Co. v. Reed Equip. Co., 381 So.2d 45, 50-51 (Ala. 1980)(holding that, where there is no ambiguity in an insurance contract, coverage under the policy cannot be created or enlarged by waiver or estoppel so as to bring within the coverage of the policy risks not covered by its terms or risks expressly excluded therefrom); Woodall v. Alfa Mutual Insurance Co., 658 So.2d 369 (Ala. 1995).

The Plaintiffs write "Alabama law affirmatively holds that a judgment rendered against a trade name is a judgment against the entity doing business

4

under that trade name so long as the entity was served with the Complaint." Plaintiffs' brief. Assuming this to an accurate statement of the law, the <u>entity</u> that did business was KMAC Organics, LLC. This legal entity was never covered under a policy of insurance by Evanston. The principle shareholders made the conscious decision that this entity only had exposure for trucking liability and so purchased insurance to cover that risk of liability. A conscious decision was made not to purchase a general liability policy for the composting entity, KMAC Organics, LLC. Ex. 9, pp. 93-94. Now, after making the decision not to purchase insurance for that risk, they seek to collusively join with the underlying plaintiffs to obtain general liability coverage without paying a premium.

**B.    Evanston's Insured Was Not Liable To The Plaintiffs.**

As argued previously, even assuming the judgment was rendered against Process Knowledge Corporation, and Process Knowledge Corporation is the named insured under Evanston's policy, there is no evidence to support a claim it was liable to the Plaintiffs for the claims alleged in state court. If Process Knowledge Corporation was not "legally obligated to pay" the Plaintiffs, then coverage is not invoked under the policy.

The fact that the Plaintiffs and the Defendants in the state court litigation entered into an agreement to file a Joint Stipulation and Motion for Corrected

Entry of Judgment Due to Clerical Error, and the fact that an Order Correcting Consent Judgment was prepared and entered by the state court, the same day the Plaintiffs' Response was due with this Court, is merely indicative of collusion, and not indicative that Evanston should be held liable to pay the $1,000,000 judgment.

Stone Building Co. v. Star Electrical Contractors, Inc., 796 So.2d 1076 (Ala. 2000), clearly holds that there can be no indemnity for losses to which the indemnitee (state court Defendants) improperly consents. In this case, there is clearly an agreement between the state court Defendants and the Plaintiffs to force Evanston to pay the judgment, and that agreement is made quite clear by this last ditch effort to simply make the consent judgment fit with the terms and provisions of the policy. There was no Defendant in the state court litigation which was identified by the Plaintiffs as "Process Knowledge Corporation d/b/a KMAC Services." The fact that the Plaintiffs and Defendants have simply now entered into an agreement as to the appropriate name of the Defendant does not alter the original pleadings filed in the case, or alter the fact that at the time these garnishment proceedings were instituted, Process Knowledge Corporation improperly agreed to have a judgment rendered against it with the intention that its insurance carrier be responsible for paying a judgment which Process Knowledge was not responsible for paying. As stated above, there is no evidence that Process

Knowledge was liable to the Plaintiffs for anything related to the composting activities at Wenonah Road. Accordingly, to the extent it agreed to pay any judgment, and to the extent a judgment was rendered against it which was covered by the policy, such agreement was not proper and Evanston is not liable to the Plaintiffs to pay the judgment, and the amended consent judgment does not alter this fact.

### C.  Evanston Is Not Estopped The Issue Of An Unreasonable Settlement Where There Is Evidence Of Collusion.

The Plaintiffs have failed to meet their burden of proving potential liability of any Evanston insured to the Plaintiffs, they have failed to meet their burden of establishing that the consent judgment of $1,020,000 was reasonable, and have failed to demonstrate good faith in entering into the Consent Judgment, and now entering into the Order Correcting Consent Judgment. See Stone Building Co. v. Star Electrical Contractors, Inc., 863 So.2d 1071, 1077, n.3 (Ala. 2003).

It is clear with the agreement between the state court Defendants and Plaintiffs that there is a joint effort to have Evanston pay a judgment for which its insured is not responsible. The entity responsible for the composting activities, the activities which the Plaintiffs contend proximately caused their damages, was KMAC Organics, LLC. There was a conscious decision made by Klinner and

McCollum to purchase only trucking liability insurance coverage for that entity. Any effort made over two years after the consent judgment was entered, to alter the entity against whom the judgment was entered, is clearly a collusive effort to force insurance to pay a judgment for which its insured is not responsible.

This is not the type of "good faith settlement" that was discussed in the Stone Building case. Rather, because of this joint effort to change the judgment, the Plaintiffs should now be forced to prove actual liability on the part of an insured under Evanston's policy of insurance, which they cannot do, as they cannot demonstrate potential liability.

### D.     The Plaintiffs' Claims Are Excluded By The Terms And Provisions Of The Policy.

Assuming any entity which is insured under Evanston's policy of insurance was liable to pay the Consent Judgment, which Evanston disputes, the Plaintiffs' claims against "KMAC" are excluded by endorsement M/E-001 (4/00), the pollution exclusion, and/or by M/E-001A (7/01), the "Asbestos, Lead, Silica Dust, Mold, Bio-organic Growth or Mildew" exclusion.

As recognized by the Plaintiffs, Part(B) of the Pollution Endorsement:

> clearly and unambiguously excludes coverage for any loss, cost, expense, fines and/or penalty arising out of (1) government ordered clean-up of pollutants or (2) **litigation** or administrative procedure **resulting from allowing pollutants into or upon land, air, water, etc**.

(Plaintiffs' brief at 21). The Plaintiffs' state court pleadings are clearly litigation resulting from allowing pollutants into or upon land, air, water, etc. This part of the endorsement is not simply limited to protracted legal fights under CERCLA and other environmental statutes. It encompasses any litigation, and all loss, cost, expense, fines and/or penalties arising out of any such litigation. The consent judgment of $1,000,000 clearly falls within this endorsement.

The Plaintiffs additionally fail to cite the Court to the first part of the endorsement which reads:

> Under 2. Exclusions, f. Pollution, Commercial General Liability Coverage Form, Section I. - Coverages, Pollution/environmental impairment/contamination is not covered under this policy, nor are any expenses nor any obligation to share damages with or repay anyone else who must pay damages from same in conjunction with occurrences arising or alleged to have arisen out of same. All liability and expense arising out of or related to any form of pollution, whether intentional or otherwise and whether or not resulting injury, damage, devaluation, cost or expense is expected by any Insured or any other person or entity is excluded throughout this policy.

Ex. 1, p. 00010. The pollution exclusion clearly operates to exclude coverage for all claims asserted by the Plaintiffs in the state court litigation.

Finally, although the Plaintiffs acknowledge that asbestos, silica and mold cases would be excluded by the Asbestos, Lead, Silica Dust, Mold, Bio-organic Growth or Mildew Endorsement, they claim that Bio-Organic Growth would not

9

be excluded. If asbestos claims would be excluded, then bio-organic growth claims, like the claims asserted by the Plaintiffs in state court, would also be excluded.

### D.   Evanston Has Not Waived Any Right To A Judgment.

The Plaintiffs are now claiming that Evanston has engaged in such extensive discovery in this case that it has waived any right to assert the Plaintiffs' failure to contest the verified answer as grounds for judgment in this case. However, in other pleadings filed with this Court, the Plaintiffs represent that Evanston's failure to meaningfully participate in discovery" has prevented the Plaintiffs from opposing Evanston's Motion for Summary Judgment. See Plaintiffs' Rule 56(f) Motion. The Plaintiffs cannot argue it both ways, and Evanston is entitled to a judgment in its favor as a matter of law based on the failure of the Plaintiffs to timely contest the verified answer.

/s/Dorothy A. Powell
MARK W. LEE
DOROTHY A. POWELL

**OF COUNSEL:**

PARSONS, LEE & JULIANO, P.C.
300 Protective Center
2801 Highway 280 South
Birmingham, AL  35223-2480

## CERTIFICATE OF SERVICE

I hereby certify that on this the 20th day of November, 2007, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Mr. Richard E. Smith
Mr. Greer Mallette
CHRISTIAN & SMALL, LLP
1800 20th Street, North
Birmingham, AL 35203


/s/Dorothy A. Powell
OF COUNSEL